His Honor, CHARLES F. CLAIBORNE,
rendered the .opinion and decree of the Court, as follows:
This is a proceeding to fix the fees of experts appointed by the Court.
*17 The plaintiff company was insured .against fire upon its stock for $33,200 in eighteen different companies. The amount insured by the defendant was only $1,000. The plaintiff suffered a total loss by fire. It made proof of loss which the defendant and all the other companies refused to pay.
The plaintiff brought eighteen separate .and distinct suits against each and every company carrying a policy in its favor, making as many suits as there were policies including a separate suit -against the defendant company. So it happened that there were eleven suits, eacn under $2,000, filed in the Civil District Court of New Orleans, and seven suits, each above $2,000, filed in the United States Court.
The main ground of defense, among others was, fraudulent over valuation of loss by plaintiff and consequent forfeiture of the policy.
The case against this defendant was the first one fixed for trial.
On October 27th, 1909, the Court, on its own motion, appointed as experts to examine plaintiff’s books and make a report of the amount of the loss based on profits, the American Audit Company, selected by the plaintiff, Oeorge St. Paul, selected by the defendant, and Elkin .Moses, umpire. On November 26th, defendant made a motion to extend the time allowed the experts to make a; report. On December 22nd, the plaintiff made a similar motion; also on January 26th, 1910, and on February 16th, 1910.
Some lack of harmony of action between the experts having been suggested by the defendant on a rule to dis *18 charge plaintiff’s expert, the Court, on March 2nd, 1910, declined to entertain the merits of the difference, revoked the order and the appointments ¡of October 27tn, of the two experts and of the umpire, and, of its own motion, .appointed the same American Audit Company and Elkin Moses as experts-
On March 31st, 1910, the two experts each filed a separate report, coming to the same conclusion. Their report was adopted and, upon the faith of it, judgment was rendered in favor of the plaintiff and against the defendant. The Court of Appeal .affirmed the judgment. 8 Ct. of App., 321. On writ of review to the Supreme Court, the judgments were set aside and the case remanded. 130 La., 18.
Upon a second trial in the Civil District Court, judgment was again rendered in favor of plaintiff which was affirmed by this Court and a writ was refused by the Supreme Court. Thereupon the defendant suffered judgment to be rendered against it in all the cases in the Uivil District Court. The cases in the United States Court were tried upon the same issues with the same result. The reports of the two experts were used upon the second trial in the Civil District Court and in the trial in the United States Court-
Thereupon the two experts took a rule against defendant company to tax their fees. Elkin Moses claims a flat amount of $2,500.' ■ The American Audit Company files the following detailed bill.
Eor services rendered in the above numbered and entitled cause as per Court appointment:
*19 From October 29th, 1909, to March 31st,
1910,154 days of 10 hours actual work, equivalent to basis of 7 1-2 hours per day...... 206 days
Sunday, Thanksgiving, Christmas, etc... 28 ”
Court attendance:
Civil District Court, first trial.......... 10 ”
Civil District Court, second trial........ 3 * ’ ’
Supreme Court, first trial ........... 1 ”
Court of Appeal, first and second trial.. 2 ”
Service of Messrs. Howard & Pickett and
expenses from New York............. 24 ”
Stenographers and. typewriters paid by myself............................. 3 ”
Total.............■........... 277 days
277 days at $25 per day..................$6925.00
Preparing report “average profits” quantum
meruit basis ........................... 1000.00
Preparing report “labor to material” quantum meruit basis...............•......... 200.00
$8125.00
There was judgment in favor of Elkin Moses for $1,-500 and in favor of the American Audit Company of New York for $2,500, and in favor of V. "Wermuth, a certified public accountant, who had testified as to the value of the services rendered by the experts, for $100 as an expert fee. The judgment further reserved the rights of the experts to sue the plaintiff for any additional amount they might feel they were entitled to recover.
The defendant alone has appealed. It contends that it is in no way liable for the expert fees, and that, even if *20 liable, the amounts- fixed by the District Court are excessive, and that the allowance of a fee to C. Wermutb was not authorized by law.
I.
We entertain no doubt of the liability of the defendant for the fees of the experts. Their appointment was authorized by law. 0. P., 442, 443. Defendant acquiesced in their appointment.
C. P., 462:
“Experts, auditors of accounts, and arbitrators, named in pursuance of the provisions enacted in this section shall be entitled to receive such compensation for their services as the Court may determine, according to the nature of the cause, and such compensation shall be included in the taxed costs, and shall be paid by the-party cast.”
'0. P., 552:
“The costs to be paid by the party cast include not only the taxed costs, but also * * * the compensation allowed for their services to such experts, auditors, or judicial arbitrators, as may have been appointed in the suit, etc.”
Act 19 of 1884, p. 25.
II.
The only question therefore is the amount of that compensation.
In the case of the Succession of C. N. Roth, No. 6277, Court of Appeal, decided January 18th, 1915, we said:
“In estimating the value of services rendered by attorneys Courts are guided by three elements, their *21 quality, their quantity, and the value of the subject-matter concerning which the services were rendered.”
The same rule may be applied to auditors.
There is no denial that the services rendered by the experts were of a high order; that they were of a class superior to those rendered by mere book-keepers; that they required a higher order of intelligence, discrimination, co-ordination, analysis, research and patience; that their results and findings were correct, and in accord with the conclusions of defendant’s own expert, and were adopted by the judgments of three Courts.
Their quality is to .a certain extent self-evident. Res ipsa loquitur. The bulk of the work was done by Paul Fortier, representing the American Audit Company. He obtained the original information and figures from the books of the company and from J. Julius Lips, an officer of the company, and marshaled them in methodical and intelligent order so as to draw light from obscurity and certainly from chaos. His report is thirty pages long. Annexed thereto is a detailed exhibit, 298 pages long, containing a statement and analysis of the different qualities of glass, merchandise, wood-work, freight and drayage in and out, labor ' account sales, prime cost of glass, and expenses, and cost of completing contracts, all necessary for the decision of the case. Although about one-half of that exhibit consists of copies of calculations by J. Julius Lips of cost of glass and extracts from the ledger, they show that they were considered. But Mr. Fortier seems to overrate the number of days of his employment. Although appointed on October 29th, he was sworn only on November 2nd. Mr. *22 Moses says they began work only on November 29th, when they .held their first meeting. He says also that there was really no work done until the order appointing him and Mr. Fortier; up to the time Mr. St. Paul was removed (March 2nd, 1910) there was virtually nothing done, they were waiting on Mr. Lips to give the figures and it took Lips five or six months to make up the figures, and during that time nothing was done. Although Mr. For-tier charges up to March 31st his report is dated March 14th. Nor can he charge for his attendance in the Supreme 'Court and in the Court of Appeal where his presence was not required.
Mr. Elkin Moses’ work was not'.as arduous or complete as that of Mr. Fortier. He checked up from original entries and from Mr. Fortier’s report; he was engaged 45 working days and 17 days in attendance at Court, including the United States Court; during all that time he was occupied in other work of his own as certified public accountant. His report is twelve pages long.
Mr. St. Paul testifies that the work these experts did could have been done in ten or fifteen days.
There is a difference of opinion as to the value of the subject-matter concerning which the services were rendered. The plaintiff insists that it was $33,200 and more, while the defendant argues that it was only $1000.
It is true that the amount involved in this suit was only $1000; but there were seventeen other suits amounting to $32,200; the defense in all of them was the same'; the testimony elicited in this suit from these experts was decisive of all the other suits. If defendant had been unwilling to bear alone the brunt of the defense, it might have asked for a consolidation of all the suits in the State -Court. But the evidence is that the various insur *23 anee companies had joined to employ the same adjustor, the same expert, and the same attorney, and that eacli paid its proportion of the expense of defending the suit. It requires no effort to presume that that agreement covers costs of Court also.
The last and most.difficult point to settle is the value of the services rendered under the circumstances above set forth. Mr. Wermuth, certified public .accountant, testified that he employs nine men at salaries ranging from five dollars a day to $2,400 a year; that they are capable of doing any kind of work under his direction,he values the services of a certified public accountant at $25 a day; he did work for the State of Mississippi during seven or eight months at the rate of ten dollars a. day; he does work in this city also for $10 a day. He values the services of Paul Fortier at $4,000 or $5000, .and those of Elkin Moses .at $2,500. His testimony as to these amounts is not entitled to much weight, because he does not know where or how either procured his information as the basis of his report, nor how long it took to do the work. But since the case of Villalobos vs. Mooney, 2 La., 333, in 1832, the Courts have said that there was an “esprit de corps” prevailing among men of the same profession which prompted them to value their services at the highest possible rate, and that'the truth was found in the lowest estimate.
See also 11 A„, 1.06; 13 A., 96; 35 A., 1138; 42 A., 631.; 48 A., 46.
The correctness of that opinion is exemplified by the testimony of Mr. Chappius, another accountant, who testified in this case that the services rendered by Mr. Paul Fortier were worth $10,000.
*24 We, therefore, think that a fee of eighteen hundred dollars for the American Audit Company and of seven hundred and fifty dollars for Elkin Moses will be a reasonable compensation under the circumstances for all the services rendered by them under the orders of the Court herein.
But we cannot approve the fee of $100 .allowed C. E. Wermuth. There was no issue and no trial concerning’ it in the District Court; the defendant was entitled to a notice and hearing of the claim.
35 A., 1170.
Besides we have very serious doubts whether professional men called as witnesses to téstify to the value of services rendered by experts are those mentioned or intended by Articles 462 and 552 of the Code of Practice or Act 19 of 1884, p. 25. The experts- spoken of in those laws are those who give their testimony and opinions upon some points or questions of science, art, law or medicine, or who do some work in connection therewith, or elucidate accounts.
It is therefore ordered, adjudged and decreed that the judgment herein be amended by reducing the amount allowed to Elkin Moses from fifteen hundred dollars to seven hundred and fifty dollars, and by reducing the ■amount allowed to the American Audit Company of New York from twenty-five hundred dollars to eighteen hundred dollars, and that the judgment in favor of C. E. Wermuth for one hundred dollars be reversed and set 'aside and said sum disallowed, and that in other respects said judgment be affirmed.
It is further ordered that the plaintiff pay the costs of this appeal.
*25 Opinion and decree, March 13th, 1916.
Judgment amended and affirmed in part and reversed in part. ■
St. Paul, J., recused, takes no part.